UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **LAUREN PIERCE,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | Case No. 8:19-CV-02876 (CBD) |
| v. | * | |
| | * | |
| **NATIONAL ARCHIVES,** | * | |
| | * | |
| Defendant. | * | |

************

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

Plaintiff Lauren Pierce complains that Defendant, the National Archives and Records Administration ("NARA" or the "Agency"), failed to accommodate her mold allergy by not providing her with a full-time telework position. But NARA did give Plaintiff a full-time telework position, in which she remains to this day. Because Defendant gave Plaintiff her requested accommodation, Plaintiff has not plead and cannot establish a failure to accommodate under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 200e *et seq.* or the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* Moreover, in the time between Plaintiff's request for telework and Plaintiff's receipt of telework, the Agency took appropriate steps to evaluate Plaintiff's medical condition, her work environment, and provided reasonable accommodations short of full-time telework. Defendant's motion to dismiss or, in the alternative, for summary judgment should be granted.

**II.     FACTUAL BACKGROUND**

Ms. Pierce interviewed for and received an IT Specialist position with NARA in August of 2016. Exhibit 1 (position description). The position was based in College Park, Maryland. *Id.* She began her tour of duty on December 12, 2016. Exhibit 2 at 1 (Dec. 11, 2016 SF-50B). Her

1

supervisor was William Fumey. Three and a half months after starting her tour of duty, on March 28, 2017, "Plaintiff informed the Agency that she was disabled" due to mold in her workspace and "requested telework." ECF No. 1 (Compl.) at ¶ 23. She submitted a request for reasonable accommodation on March 29, 2017. Exhibit 3 (Mar. 29, 2017 request). Amii Limpp was the disability program manager with NARA's Office of Equal Employment Opportunity ("EEO") with primary responsibility for Plaintiff's reasonable accommodation request.

Upon receipt of Plaintiff's reasonable accommodation request, NARA began investigating the conditions in Plaintiff's workspace. On April 11, 2017, NARA commissioned an indoor air quality ("IAQ") survey that showed unremarkable quantities of mold that were consistent with outside air conditions. Exhibit 6 (May 2, 2017 IAQ report). The company conducting the study reported, "I cannot recall seeing results this clean. . . . we don't really have recommendations for further testing." Exhibit 7 at 2 (May 3, 2017 Baldwin email). *See also*, Exhibit 5 (Apr. 19, 2017 email) ("I have the preliminary results of the spore trap samples back and they are perfect, absolutely zero/negative . . . . the tech taking the readings said he had never seen readings this good and wanted to know how we filtered the air."). In response to these excellent test results, NARA requested Plaintiff provide additional medical information and documentation to substantiate her allergy claims. Exhibit 8 at 1 (May 3, 2017 letter). The Agency considered the possibility that Plaintiff was being exposed to an allergen in her home or car given the IAQ survey results. Exhibit 9 at 1 (May 4, 2017 Limpp email).

While NARA reviewed Plaintiff's requests and supporting documentation, the Agency offered Plaintiff escalating interim accommodations. *See, e.g.*, Exhibit 4 at 1–2 (Apr. 11, 2017 Fumey email) (informing Plaintiff that her office would be moved and an IAQ study of her new office commissioned). Plaintiff had a reaction to her new office as well. Plaintiff submitted

another Reasonable Accommodation form on June 13, 2017. Exhibit 11 (Jun. 13, 2017 request). NARA repeatedly requested additional "clarifying information" regarding Plaintiff's medical condition. Exhibit 15 (Jun. 30, 2017 email). On July 11, 2017, Plaintiff's supervisor informed her that she would not be able to telework full-time but that NARA was "working on addressing other options or alternative accommodations we believe will be effective." Exhibit 16 at 1 (Jul. 11, 2017 Fumey email).

The Agency commissioned another IAQ study of Plaintiff's new office, conducted on July 21, 2017. Exhibit 17 (Aug. 14, 2017 IAQ Study). The study found no amplification of molds or pollen. *Id.* at 4–6. On August 29, 2017, the Agency resolved Plaintiff's June accommodation request by conducting workplace testing and providing Plaintiff with a HEPA air purification system and a professional wash-down of her office space. Exhibit 18 at 1 (Aug. 29, 2017 Accommodation Disposition); Exhibit 20 (Oct. 11–12, 2017 emails). In response, Plaintiff thanked the Agency "for sharing that the Reasonable Accommodations are now in-place." *Id.* at 1.

Unfortunately, Plaintiff returned to work on October 16, 2017 and had an allergic reaction to her newly-cleaned workspace "a few hours later." Exhibit 22 at 2 (Dec. 19, 2017 disposition). Upon learning this, NARA escalated its contemplated accommodations. Exhibit 21 at 2 (Oct. 25, 2017 Limpp email) ("If she is still having complications after the [reasonable accommodation was put in place (HEPA and wash down- return to work), then it is deemed ineffective. The next step would be . . . look for a position which is 100% telework.").

Plaintiff submitted a worker's compensation claim based on Chronic Allergic Conjunctivitis, which was approved on November 27, 2017. Exhibit 29 (workers compensation case history). She received compensation payments for the period October 17, 2017 until August

3

18, 2018. *Id.* Archives offered Plaintiff a reassignment to a full-time telework position on December 20, 2017. Exhibit 24 (Dec. 20, 2017 letter). Archives continued its review of Plaintiff's medical condition into January of 2018. *See* Exhibit 25 (Jan. 11, 2018 email from Limpp). The Agency commissioned another IAQ evaluation on February 14–15, 2018 to examine both of Plaintiff's prior workspaces. Exhibit 27 (Apr. 9, 2018 IAQ Report). On April 3, 2018, NARA granted Plaintiff's request for 100 percent telework. Exhibit 26 (Apr. 3, 2018 disposition). Plaintiff returned to duty in August of 2018 with 100 percent telework. Exhibit 30 (Aug. 5, 2018 SF-50B).

Plaintiff filed the instant lawsuit on September 30, 2019. ECF No. 1. The complaint contains a single count alleging failure to accommodate Plaintiff's allergy to mold. *Id.* at ¶¶ 36–43.

### III.  LEGAL STANDARDS

#### A.  Claims must be dismissed for failure to state a claim under Rule 12(b)(6) where the complaint fails to plead essential elements of a claim.

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of a plaintiff's complaint. *See Presley v. City of Charlottesville*, 464 F.3d 480, 484 (4th Cir. 2006). When ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must "accept the well-pled allegations of the complaint as true, and . . . construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. U.S.*, 120 F.3d 472, 474 (4th Cir. 1997). Although a pleading called into question by Rule 12(b)(6) does not need to provide "detailed factual allegations," something "more than labels and conclusions" is required, and there must be factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion, a

4

pleading must contain "enough factual matter (taken as true) to suggest" the viability of the plaintiff's claims. *Id.* at 556.

Where "a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See also*, *Francis v. Giacomelli*, 558 F.3d 186, 193 (4th Cir. 2009) ("[N]aked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." (internal quotations omitted)).

In deciding a motion to dismiss, a court should first review the complaint to determine which pleadings are entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 679. "When there are well pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* While a court must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999), a court need not accept legal conclusions unsupported by facts, *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

### B. The Court may consider evidence outside the pleadings under Rule 12(d).

If a party provides the court with material outside the pleadings and the court considers that material, then the court treats the motion to dismiss as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F. Supp. 2d 551, 556 (D. Md. 2003). Federal Rule of Civil Procedure 12(d) governs conversion of a motion to dismiss into a motion for summary judgment.

Here, Defendant has provided the Court with a number of documents and emails pertaining to the allegations in the complaint. Of these, Plaintiff's complaint specifically references the following:

- Exhibit 3 (Mar. 29, 2017 accommodation request); *see* Compl. ¶¶ 24–25;
- Exhibit 11 (Jun. 13, 2017 accommodation request); *see* Compl. ¶ 27;
- Exhibit 17 (Aug. 14, 2017 Indoor Air Quality ("IAQ") study); *see* Compl. ¶ 29;
- Exhibit 18 (Aug. 29, 2017 accommodation disposition); *see* Compl. ¶ 31;
- Exhibit 29 (workers compensation case history); *see* Compl. at ¶ 34.

To the extent the Court both relies on the attached exhibits and determines they fall outside the pleadings, such reliance could convert the Agency's motion to dismiss into a motion for summary judgment pursuant to Rule 12(d).

The Fourth Circuit has held that a proper Rule 12(d) conversion requires two things. *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). First, all parties must "be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment," which can be satisfied when a party is "aware that material outside the pleadings is before the court." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). A "motion's alternative caption and attached materials are in themselves sufficient indicia." *Dabas v. Brennan*, No. CCB-17-392, 2018 WL 1300965, at *4 (D. Md. Mar. 13, 2018) (citing *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260--61 (4th Cir. 1998)). Second, the parties must "be afforded a reasonable opportunity for discovery." *Pregnancy Concerns*, 721 F.3d at 281. A complete administrative record may suffice for this discovery opportunity. *C.f. Dabas*, 2018 WL 1300965, at *4 (finding adequate opportunity for discovery in pre-discovery motion for summary judgment where "[t]he administrative record in this case was voluminous").

6

**C.     Summary judgment is warranted under Rule 56 if there is no genuine issue of material fact as to a required element of Plaintiff's claim.**

On a motion for summary judgment, the moving party bears the burden of demonstrating that there are no genuine issues as to any material facts and that it is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c)(2); *see also, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Court must construe the facts alleged in the light most favorable to the nonmoving party.  *Liberty Lobby*, 477 U.S. at 255.  However, "this does not mean that any factual dispute will defeat the motion."  *Dabas*, 2018 WL 1300965, at *4.  The Supreme Court has acknowledged that "*some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Liberty Lobby*, 477 U.S. at 247--48.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  Where "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case, with respect to which [he] has the burden of proof," the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  District Courts considering a motion for summary judgment have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (internal quotations omitted).

**IV.    ARGUMENT**

To state a prima facie claim under the Rehabilitation Act for failure to accommodate, a plaintiff must show that (1) she has a disability; (2) her employer was aware of the disability; (3)

7

with reasonable accommodations she was otherwise qualified to perform the essential functions of the employment position in question; and (4) her employer refused to make such reasonable accommodations. *Lewis v. Gibson*, 621 Fed. Appx. 163, 164 (4th Cir. 2015), *cert. denied sub nom.* 136 S. Ct. 840 (2016) (citing *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013)). Even assuming Plaintiff can establish the first three elements of her prima facie case, she cannot establish the fourth because NARA provided Plaintiff with her requested accommodation.[1] The fact that the Agency needed time to review Plaintiff's submissions and scientific data does not save Plaintiff's claim from dismissal or summary judgment.

### A. NARA gave Plaintiff her requested accommodation of 100 percent telework.

Plaintiff cannot satisfy the fourth element of her prima facie case because NARA provided Plaintiff with her requested accommodation. "Reasonable accommodations" are "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii); *see also* 42 U.S.C. § 12111(9).

Here, Plaintiff claims that she submitted a reasonable accommodation request on March 29, 2017 and she requested 100 percent telework. ECF No. 1 at ¶¶ 24–25. Exhibit 3 (Mar. 29, 2017 accommodation request). Archives offered Plaintiff a reassignment to a full-time telework position on December 20, 2017. Exhibit 24 (Dec. 20, 2017 letter). On April 3, 2018, NARA

---

[1] The only count in Plaintiff's complaint is for failure to accommodate. As a result and to reduce the volume of unnecessary briefing, the instant motion only addresses failure to accommodate. Defendant does not waive any arguments regarding its entitlement to dismissal or summary judgment as to any discrimination or retaliation claims suggested by Plaintiff's complaint. To the extent Plaintiff intends to advance such claims, Defendant argues that those claims are not adequately alleged in the instant complaint. Should the Court be inclined to consider such claims, Defendant respectfully requests notice and the opportunity to submit additional briefing.

granted Plaintiff's request for 100 percent telework.  Exhibit 26 (Apr. 3, 2018 disposition). Because the Agency did provide Plaintiff with her requested accommodation, she cannot establish that her employer refused to make a reasonable accommodation to her alleged disability.

Although Plaintiff may argue that approximately twelve months elapsed between her accommodation request and the Agency's agreement to grant Plaintiff 100 percent telework, this delay is immaterial.  In *Rhodes v. Montgomery County*, Judge Grimm considered a case in which a plaintiff received a reasonable accommodation only after a long delay in which the plaintiff claimed her employer acted "improperly" or "callously" in denying a previous accommodation request.  No. PWG-12-3172, 2015 WL 221861, at *7 (D. Md. Jan. 13, 2015).  Judge Grimm determined that any machinations prior to providing a concededly reasonable accommodation were "utterly beside the point" where "[t]he undisputed facts show that Rhodes was offered, and accepted, a position that constituted a reasonable accommodation."  *Id.*  (granting summary judgment to the employer because these facts "cannot support a prima facie case for failure-to-accommodate").  Although NARA disputes any characterization that it behaved improperly in evaluating Plaintiff's reasonable accommodation request, any suggestion that it did "matters not" where, as here, Plaintiff ultimately received her requested accommodation.  *Id.* at *7.  *See also*, Section IV.B, *infra* (arguing that the relevant regulations entitle NARA to evaluate Plaintiff's medical documentation and explore reasonable accommodations different from Plaintiff's requested accommodation).  Because NARA granted Plaintiff's request for full-time telework, Plaintiff cannot succeed on her failure to accommodate claim as a matter of law.

**B.      The delay in providing Plaintiff with her requested accommodation does not save Plaintiff's claim because an employer is entitled to independently evaluate an employee's disability claim.**

Between March of 2017 and April of 2018, Plaintiff alleges that she made two requests for 100 percent telework that the Agency denied. ECF No. 1 at ¶¶ 26, 31.[2] The Agency's grant of Plaintiff's requested accommodation should end the Court's analysis because Plaintiff cannot dispute that she ultimately received a reasonable accommodation. *See* Section IV.A, *supra*. But even if the Court considers the Agency's process in reasonably accommodating Plaintiff, her complaint should still be dismissed or summary judgment granted because the Rehabilitation Act permits employers to independently evaluate an employee's claims of disability before granting accommodation requests. Moreover, Plaintiff cannot establish that the Agency failed to provide her with any reasonable accommodations in response to her requests while it completed this evaluation process.

**1.      An employer is entitled to seek out and review documentation supporting the employee's request, and is not required to rely on her own representations of disability.**

The fact that the Agency required time to review Plaintiff's evolving medical documentation and analyze scientific data does not negate the fact that NARA ultimately provided Plaintiff with her requested accommodation. The Rehabilitation Act does not require an employer to accept an employee's self-assessment of disability immediately and without independent investigation. Indeed, the regulations governing requests for reasonable accommodations allow an employer to seek medical documentation rather than trust the employee's representation of her

---

[2]      In fact, the Agency did not deny Plaintiff's second accommodation request, but rather granted it in part and continued to work with Plaintiff to ensure the provided accommodations were effective. Exhibit 18 (Aug. 29, 2017 disposition). *See also*, Exhibit 22 (Dec. 19, 2017 disposition) (noting Ms. Pierce's reaction to her cleaned workspace); Exhibit 26 (Apr. 3, 2018 disposition) (granting 100 percent telework).

10

own disability. 29 CFR 1630.14. *See also Young v. UPS*, 784 F.3d 192, 199-200 (4th Cir. 2013) (holding employer had legitimate reason to seek some verification that employee was able to perform job duties); *May v. Roadway Express, Inc.*, 221 F. Supp. 2d 623, 628 (D. Md. 2002) ("While Plaintiff may have been 'flabbergasted' that Defendant did not automatically accept his own determination that he was disabled without first obtaining some medical documentation, the Court finds nothing untoward in Defendant's straightforward request for additional information.").

Here, in the time before the Agency granted Plaintiff's accommodation request, NARA commissioned three IAQ studies to identify the presence of any mold in Plaintiff's workspaces, which yielded unremarkable results. Exhibits 6 (May 2, 2017 IAQ report), 17 (Aug. 14, 2017 IAQ report), 27 (Apr. 9, 2018 IAQ report). Plaintiff submitted medical documentation to substantiate her reasonable accommodation request, which NARA reviewed and acted upon. *See generally* Exhibit 28 (medical records); Exhibit 19 (Sept. 20, 2017 Limpp email) (noting that NARA would conduct an additional IAQ test to include allergens identified by Plaintiff's doctor).

The record is replete with evidence of NARA's careful review of Plaintiffs' records and the relevant scientific studies. *See, e.g.*, Exhibit 8 at 1 (May 3, 2017 letter requesting medical documentation); Exhibit 12 at 1 (June 13, 2017 Limpp email) (discussing environmental testing needed); ("I am in the process now of discussing the test results and any further test that may happen."); Exhibit 13 (June 19, 2017 emails); Exhibit 14 (Jun. 20–28, 2017 emails with Plaintiff) (seeking clarification on Plaintiff's medical records and purported allergies in order to target IAQ testing); Exhibit 15 (Jun. 30, 2017 Limpp email) ("I asked you for clarifying information of which you have not provided. It is necessary to get all the information, whether that be doctors' recommendations, test results, etc., so that the supervisors can make an informed decision about your request."); Exhibit 19 (Sept. 20, 2017 Limpp email) (summarizing Agency's efforts to review

Plaintiff's medical documentation, examine Plaintiff's workspace, and provide accommodations); Exhibit 25 at 1 (Jan. 11, 2018 Limpp email) (summarizing NARA's steps in evaluating Plaintiff's medical records).

NARA is not required to accept Plaintiff's assessment of her disability on its face. As permitted by law, NARA requested and evaluated Plaintiff's medical records and scientific studies of her workspace before ultimately granting Plaintiff the 100 percent telework accommodation she requested. On these facts, Plaintiff cannot prove failure to accommodate.

> **2. NARA provided Plaintiff with reasonable accommodations while it assessed the extent of Plaintiff's allergy and the possibility of accommodating her with anything short of 100 percent telework.**

The Fourth Circuit has described the process of identifying reasonable accommodations as "an interactive process" in which the employer has "the ultimate discretion" in choosing an accommodation. *Jacobs v. N.c. Admin. Office of the Cts.*, 780 F3.d 562, 580 (4th Cir. 2015); *Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407, 415–16 (4th Cir. 2015). *See also*, *Valluzzi v. Azar*, No. 18-cv-3602-PX, 2020 WL 128457, at *9 (D. Md. Jan. 10, 2020) (citing *Jacobs* and *Reyazuddin*). The law does not require an employer to provide an employee with her precise requested accommodation, "the employer need only provide some reasonable accommodation." *Crawford v. Union Carbide Corp.,* No. 98–2448, 1999 WL 1142346, *4 (4th Cir. 1999) (citation omitted), *cert. denied,* 530 U.S. 1234 (2000).

Plaintiff requested four reasonable accommodations: 100 percent telework, a test of two of the Agency's office buildings, and the option to work from a different building if it were found to be free of allergens. *See, e.g.*, Exhibit 11 (Jun. 13, 2017 accommodation request). NARA took a number of measures to assess the extent of Plaintiff's disability and the reasonableness of available accommodations. NARA conducted an IAQ test of Plaintiff's workspace to quantify the presence of mold, which yielded unremarkable results. *See generally*, Exhibit 6 (May 2, 2017 IAQ

report).  NARA moved Plaintiff to a new workspace, where she still had an allergic reaction. Plaintiff provided NARA with a doctor's note listing her specific allergies, so NARA commissioned another IAQ study of that new workspace to include Plaintiff's specific allergens, which also yielded "no trace of the specific allergens identified by" Plaintiff's doctor.  Exhibit 10 (Jun. 7, 2017 Limpp email) (noting that the Agency would test for two items omitted from original test); Exhibit 18 (Aug. 14, 2017 IAQ study); Exhibit 19 at 2 (Sept. 20, 2017 Limpp email) (explaining results of August IAQ study).

In light of the IAQ results finding no mold and the fact that Plaintiff's job required her to be on site, NARA initially determined that 100 percent telework was not an appropriate accommodation for Plaintiff.  Exhibit 18 at 2 (Aug. 29, 2017 disposition) (noting Plaintiff's "position requires access to classified information, which can only be done on site," that required trainings also needed to be done on site, and that Plaintiff had accessibility and availability deficiencies while teleworking, which made 100 percent telework ineffective).  Instead, NARA provided Plaintiff with a HEPA air filter for her new office and conducted a "professional wash down" of her office for dust.  *Id*.  In contemporaneous emails, Plaintiff indicated that these interim accommodations were reasonable and returned to the office.  Exhibit 20 at 1 (Oct. 11–12, 2017 emails).  Unfortunately, once Plaintiff returned to the office on October 16, 2017 she determined that she was still having an allergic reaction, despite the accommodations.  Exhibit 22 at 2 (Dec. 19, 2017 disposition).  In light of the failure of the Agency's efforts to accommodate Plaintiff, it determined that Plaintiff would need to be reassigned to a position that would allow her to telework full time.  *See generally* Exhibit 24 (Dec. 20, 2017 letter).

During the time Plaintiff's request was pending, she was permitted to utilize her accumulated sick leave in accordance with the Agency's policies, which is in and of itself a form

of a reasonable accommodation. *Moore v. Md. Dep't of Pub. Safety & Corr. Servs.*, No. 11-553-CCB, 2011 WL 4101139, at *3 (D. Md. Sept. 12, 2011) (temporary leave may be a reasonable accommodation); *Barnett v. Uniformed Servs. Univ. of the Health Scis.*, No. 10-2681-DKC, 2011 WL 3511049, at *11 (D. Md. Aug. 9, 2011) ("Permitting the use of accrued paid leave or unpaid leave to obtain medical treatment may constitute a reasonable accommodation"). Additionally, Plaintiff received workers compensation payments from October 17, 2017 until August 18, 2018, when she returned to work with 100 percent telework. Exhibit 29 (workers compensation records).

Although Plaintiff claims that her requests for accommodation were denied, the record shows that the process of arriving at 100 percent telework for Plaintiff was interactive and iterative. Although the Agency did not give Plaintiff 100 percent telework immediately, the Agency acted consistently with its obligations under the Rehabilitation Act by providing Plaintiff with reasonable accommodations short of 100 percent telework, consistently with the results of IAQ tests, and then increasing those accommodations as needed until Plaintiff was ultimately allowed to telework full-time. In light of these facts, Plaintiff cannot establish failure to accommodate.

## V.  CONCLUSION

Plaintiff's complaint must be dismissed or summary judgment granted because she received the accommodation she requested. In the time between her request and the accommodation, the Agency acted consistently with the governing regulations when it evaluated Plaintiff's medical documentation, conducted scientific evaluations of her workspace, and provided reasonable interim accommodations. Plaintiff fails to state a claim, or in the alternative, the Agency is entitled to judgment as a matter of law.

Respectfully submitted,

ROBERT K. HUR
United States Attorney

_____/s/_____
Molissa H. Farber
Assistant United States Attorney
36 S. Charles Street, Fourth Floor
Baltimore, Maryland 21201
410-209-4862
Molissa.Farber@usdoj.gov